# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LAURA RODRIGUEZ, et al.** | * | |
| Plaintiffs | * | |
| v. | * | Civil No.: **PJM 14-3186** |
| **BOWIE ASSISTED LIVING, INC., et al.** | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Laura Rodriguez, Gilda Sandoval, and Lizeth Pagoada ("Plaintiffs") have brought this suit against Bowie Assisted Living, Inc. and Tatjana Aldag ("Bowie"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* Plaintiffs and Bowie have now reached a settlement and ask the Court to approve it and dismiss with prejudice all claims in the Complaint and all counterclaims.

For the reasons that follow, the Court **GRANTS** the Amended Joint Motion for Settlement, ECF No. 25, and **DISMISSES WITH PREJUDICE** all counts of the Complaint, ECF No. 1, as to both Defendants, as well as all counterclaims, ECF No. 6, against Plaintiffs/Counter-Defendants.

# I.

Factual and Procedural Background

Bowie Assisted Living is a residential care facility in Maryland that provides housing, meals, and personal care to elderly persons and disabled adults. Tatjana Aldag is an owner and manager of Bowie Assisted Living and controlled Plaintiffs' schedule, rate of pay, and other conditions of employment. Pagoada began working for Bowie in 2007, and Rodriguez and Sandoval began in 2008. The Plaintiffs' job responsibilities consisted of cooking, cleaning, and provided other services to the residents of the care facility. They were paid a flat rate of approximately $1,600 per month rather than on an hourly basis.[1] The Complaint states that Pagoada and Sandoval worked roughly 68 hours per week, including at least one on-call overnight shift, while Rodriguez worked an additional 12 hour shift every other week. All three Plaintiffs resigned from employment on about December 31, 2013.

Plaintiffs alleged that that Bowie owes each Plaintiff approximately $25,000 in compensation for failure to pay overtime and minimum wage when they worked in excess of 40 hours per week. Bowie denied all liability, asserting that Plaintiffs are independent contractors rather than "employees" under the FLSA. The parties also dispute the total number of hours Plaintiffs' actually worked per week, whether the on-call shifts were compensable, and, as a result, the amounts, if any, Plaintiffs are owed.

Plaintiffs filed their Complaint on October 9, 2014. ECF No. 1. Following the Court's grant of extension of time, Bowie filed an Answer on January 12, 2015, which included counterclaims for indemnification and conversion of property against Rodriguez, Sandoval, and Pogoada for alleged property damage totaling $5,000. ECF No. 6. Plaintiffs initially filed an

---

[1] The Complaint states that "Plaintiffs were paid a salary of four hundred ($400) dollars on the first and fifteen of the month. . . .") ECF No. 1, ¶ 17. Plaintiffs clarified in the Joint Settlement Motion that they received a salary of approximately $1,600 per month, or $400 *per week*. ECF No. 25, at 3.

Answer, ECF No. 8, but then moved to dismiss the counterclaims on March 6, 2015, ECF No. 11. Plaintiffs also sought to amend their complaint to add a retaliation claim under the FLSA, 29 U.S.C. § 215(a)(3), in response to Bowie's counterclaims, although this Motion remained pending during settlement negotiations. ECF No. 10.

Bowie sought to be represented by new counsel, *see* ECF Nos. 14–16, and on April 30, 2015, the parties motioned to stay discovery to facilitated settlement talks. The Court stayed discovery through June 15, 2015, ECF No. 18, and again through October 31, 2015. ECF No. 20. On October 27, 2015, the parties filed a Joint Motion for Settlement, ECF No. 23, and at the Court's request, provided supplemental information on the fairness and reasonableness of the settlement in an Amended Joint Motion. ECF No. 25.

## II.

Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Beam v.*

*Dillon's Bus Serv., Inc.*, No. DKC 14-3838, 2015 WL 4065036, at *3 (D. Md. July 1, 2015) (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must reflect a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Beam,* 2015 WL 4065036, at *3 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). The court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Beam,* 2015 WL 4065036, at *3 (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

### III.

Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the court examines the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17.

Under the FLSA, employers are generally required to compensate employees at a rate that is no less than the federal minimum wage for all hours worked. 9 U.S.C. § 206(a). The FLSA also requires prevents an employer from "employ[ing] any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The violation of Sections 206 or 207 of the FLSA trigger employer liability for unpaid wages as well as liquidated damages. 29 U.S.C. § 216(b).

Among other things, the parties dispute whether Plaintiffs are "employees" under the FLSA or independent contractors. Plaintiffs allege that, as non-exempt workers, they are each entitled to $25,000 for overtime and unpaid wages below federal minimum wage.[2] Bowie denies liability on the grounds that Plaintiffs were employed as independent contractors and submits that it is prepared to introduce their signed independent contractor agreements.[3] The parties also dispute the number of hours Plaintiffs worked per week, and the amount, if any, of overtime and minimum wage compensation Plaintiffs are owed as a result. Bowie concedes that there may some inadequacies in its official time records, but maintains that its time records and witness testimony will refute Plaintiffs' claims. Finally, there is a dispute over whether Bowie willfully committed the alleged violations.

The parties stipulate, and the Court so finds, that a *bona fide* dispute exists as to Bowie's liability under the FLSA, whose resolution would depend on both further factual development and rulings of law.

**IV.**

Fairness and Reasonableness

If a *bona fide* dispute is found to exist, the court must then evaluate the fairness and reasonableness of the settlement based on the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in

---

[2] The Joint Motion does not state whether the claim for $25,000 includes liquidated damages. *See* ECF No. 25, at 3.

[3] The Fourth Circuit applies a six-factor "economic realities" test to determine whether a worker is an employee or an independent contractor. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006). A signed agreement that refers to workers as independent contractors is not dispositive under this test. *See McFeeley v. Jackson St. Entm't, LLC,* 47 F. Supp. 3d 260, 273 (D. Md. 2014).

relation to the potential recovery. *Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Having reviewed the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* dispute.

Parties may settle an FLSA case at an early stage provided that the plaintiff has had sufficient opportunity to evaluate the viability of claims and potential range of recovery. *See Saman*, 2013 WL 2949047, at *3. The parties in this case reached a settlement agreement at an early stage, prior to formal discovery. Thus far, the parties have only "informally exchanged limited documents related to the litigation." ECF No. 25, at 2. Plaintiffs and Bowie agree at this point that the minimum wage and overtime claims "are not of the more complex variety seen in FLSA cases as neither party claims any exemptions are at issue." *Id.* The parties represent that they conducted arms-length negotiations for "many weeks" to reach agreement on the terms of the settlement. *Id.* The Court is therefore satisfied that the parties have had sufficient opportunity to assess their claims and defenses as to these disputed legal and factual issues and to engage in informed arms-length settlement negotiations.

Similarly, the Court finds no fraud or collusion in the proposed settlement, given the experience of Plaintiffs' counsel—who has at least five years of FLSA litigation experience, ECF No. 25, at 3—the endorsement of settlement by counsel for both parties, and the quality of the filings submitted to date.

Finally, as to the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery, the Court is satisfied that the settlement of each Plaintiff's claims is fair and reasonable under the circumstances. The proposed settlement is as follows: Defendants will pay Plaintiffs a sum of $25,000, of which Plaintiffs will receive

$16,750, while $8,250 is designate as attorneys' fees. The settlement amount will be equally divided among Plaintiffs, with each Plaintiff receiving $5,583 total in two payments—the first for $3,350 and the second for about $2,233.[4] ECF No. 25-1, at 2. Defendants have agreed to dismiss the counterclaims related to alleged property damage, while Plaintiffs will not pursue retaliation claims.

Each Plaintiff alleges that she is owed an estimated $25,000 in overtime and unpaid base salary that meets minimum wage requirements. Accordingly, under the settlement of $5,583 each, Plaintiffs would receive approximately 22% of their claim. The Court notes that the amounts to be paid to Plaintiffs in the settlement agreement are significantly less than the value of the claims that Plaintiffs would be owed if they are successful at trial. Nevertheless, Plaintiffs are willing to compromise for less than the value of their potential claims due to uncertainty about whether they would recover at all. Plaintiffs admit in the Joint Motion that they executed independent contractor agreements,[5] ECF No. 25, at 4, which, although not dispositive, would increase the risk of going to trial. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006) (applying a six-factor "economic realities" test to determine whether a worker is an employee or an independent contractor); *McFeeley v. Jackson St. Entm't, LLC,* 47 F. Supp. 3d 260, 273 (D. Md. 2014) (finding that an agreement signed as an independent contractor was not dispositive under the economic realities test). Furthermore, in light of the apparent lack of written documentation that would support Plaintiffs' claims, and their acknowledgement that any

---

[4] It appears that the correct settlement amount is $25,300 rather than $25,000. The agreement states that the first payment to Sandoval and Pogaoda shall be $3,500. Only Rodriguez is indicated in the agreement as receiving the correct amount of $3,350. *See* ECF No. 25-1, at 2. As a result, the terms of the agreement increase these two Plaintiffs' settlement payment by $150 each. The Court will approve the settlement for $25,000, but assumes that Defendants in good faith will send the additional $300 to Plaintiffs' counsel to be divided between Sandoval and Pogoada.

[5] The Joint Motion states that Plaintiffs are willing to accept the settlement amount, in part, because "they executed independent contractor agreements affirming their status as independent contractors rather than employees." ECF No. 25, at 4.

success in proving number of hours worked would be largely based on credibility, ECF No. 25, at 4, the Court finds this settlement reasonable under the circumstances.[6]

## V.

### Attorneys' Fees

The FLSA provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)). In making that assessment, courts typically use the principles of the traditional lodestar method as a guide. *Id.* (citing cases).

The court determines an attorneys' fees award by calculating the lodestar amount, which is defined as the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014) (quoting *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."

---

[6] The settlement also contained a general waiver of Plaintiffs' claims against Bowie arising during their employment. While some courts have held that an overly broad release provision can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint, *Saman*, 2013 WL 2949047, at *5 (citing cases), if the employee is compensated reasonably for the release executed, the settlement can be accepted, and the Court is not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014). The Court finds that Plaintiffs were reasonably compensated in the amount of $5,583, particularly light of the difficulties noted above in proving Plaintiffs' minimum wage and overtime claims.

Duprey, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). In Appendix B to its Local Rules, this Court has established rates that are deemed reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)). Plaintiffs are expected to provide all documentation necessary for the court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task performed. *Saman*, 2013 WL 2949047, at \*7; Local Rule 109.2; Appendix B to the Local Rules.

Plaintiffs' counsel Deyka Williams Spencer has been an active member of the Bar since she was admitted in 2006—nine years ago. She charges an hourly rate of $300. Per Appendix B to the Local Rules, a presumptively reasonable rate for lawyers admitted to the bar for nine to fourteen years is $225–$350. Accordingly, the Court finds Ms. Spencer's hourly rate to be reasonable.

Ms. Spencer indicated that she billed 35 hours total in this case at the time settlement was reached. ECF No. 25, at 5. At her reasonable rate, she incurred $10,500 in fees, not including other litigation costs. However, in the interest of reaching a settlement, Ms. Spencer agreed to reduce the attorneys' fee award by $2,250 to $8,250. At an hourly rate of $300, this amounts to a claim for 27.5 hours.

The Court finds 27.5 hours to be a reasonable period of time for Plaintiffs' counsel to have investigated Plaintiffs' claims, drafted a Complaint, as well as a Motion to Dismiss in response to Bowie's counterclaims, and engaged in settlement negotiations. This is especially true in light of the lack of written documentation of the Plaintiffs' claims, the need to conduct interviews Spanish, and the number of weeks of alleged unpaid overtime and minimum wage claims requiring investigation and research. Accordingly, the Court finds the attorney fee award

in the proposed settlement to be reasonable.

## VI.

Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Settlement and **DISMISSES WITH PREJUDICE** Counts I, II, and III of the Complaint against all Defendants. The court further **DISMISSES WITH PREJUDICE** Counts I and II of Defendant/Counter-Plaintiffs' counterclaims against all Plaintiffs/Counter-Defendants. A separate Order will **ISSUE**.

                                                          /s/
                                    **PETER J. MESSITTE**
                          **UNITED STATES DISTRICT JUDGE**

**December 8, 2015**